Report: CZR0026

21ST JUDICIAL CIRCUIT
ST LOUIS COUNTY
CIRCUIT COURT DOCKET SHEET

Date:      05-Apr-2013
Time:      2:56:53PM
Page:      1

---

## 13SL-CC00644    RESTORATION ST LOUIS INC V 3RD ST IA LLC

**Security Level: 1 Public**

---

| | | | |
|---|---|---|---|
| **Case Type:** | CC Breach of Contract | **Case Filing Date:** | 22-Feb-2013 |
| **Status:** | Pet Filed in Circuit Ct | | |
| **Disposition:** | | **Disposition Date:** | |

---

|  | | **Release/Status Reason Change Date** |
|---|---|---|
| Judge | TOM W DE PRIEST JR (23971) | |
| Plaintiff | **RESTORATION ST LOUIS INC (ARESTSTL)** | |
| Attorney for Plaintiff | JESSE B ROCHMAN(60712) | |
| Defendant | **3RD ST IA LLC (3RDSTIALL)** | |
| Attorney for Intervenor | ROGER W PECHA (41853) | |

---

| Filing Date | Description |
|---|---|
| 22-Feb-2013 | **Judge Assigned**<br>DIV 8 |
| | **Motion Special Process Server**<br>JEFF RUBELL APPROVED ON FEBRUARY 28, 2013 |
| | **Pet Filed in Circuit Ct** |
| | **Confid Filing Info Sheet Filed** |
| 28-Feb-2013 | **Summ Issd- Circ Pers Serv O/S**<br>Document ID: 13-SMOS-236, for 3RD ST IA LLC.<br>MAILED TO ATTORNEY<br>Service/Attempt Date: 13-Mar-2013 |
| 08-Mar-2013 | **Entry of Appearance Filed**<br>ROGER W. PECHA ENTERS HIS APPEARANCE ON BEHALF OF INTERVENOR ST LOUIS TITLE LLC. |
| | **Motion to Intervene**<br>ST LOIS TITLE, LLC MOTION TO INTERVENE BY RIGHT OR IN THE ALTERNATIVE BY PERMISSION. |
| 22-Mar-2013 | **Return Service on Affidavit**<br>Document ID - 13-SMOS-236; Served To - 3RD ST IA LLC; Server - ; Served Date - 13-MAR-13; Served Time - 12:07:00; Service Type - Not Available; Reason Description - Served; Service Text - Left with Nitin Jobanputra. |

TWENTY-FIRST JUDICIAL CIRCUIT COURT
ST. LOUIS COUNTY, MISSOURI

RECEIVED & FILED
CIRCUIT COURT
ST. LOUIS COUNTY

2013 MAR 22  PM 3: 15

JOAN M. GILMER
CIRCUIT CLERK

| | | |
|---|---|---|
| RESTORATION ST. LOUIS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 13-SL-cc00644 |
| v. | ) | |
| | ) | Division No. 8 |
| 3RD ST. IA LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM TO COURT**

COMES NOW the Plaintiff, by and through its attorneys, Sandberg Phoenix & von Gontard, and herewith files the Return of Service on Defendant 3rd St. IA, LLC.

SANDBERG PHOENIX & von GONTARD P.C.

By: _____

Aaron D. French, #50759
Jesse B. Rochman, #60712
600 Washington Avenue - 15th Floor
St. Louis, MO  63101-1313
314-231-3332
314-241-7604 (Fax)
afrench@sandbergphoenix.com
jrochman@sandbergphoenix.com

*Attorneys for Plaintiff*
*Restoration St. Louis, Inc.*

4134047.1

## Certificate of Service

The undersigned certifies that a copy of the foregoing was sent by United States mail, postage pre-paid, this 19th day of March, 2013, to the following counsel of record:

3RD ST. IA LLC
Attn: Nitin Jobanputra
37 Sprain Valley Road
Scarsdale, NY 10538

3RD ST. IA LLC
Attn: Parag Meta
70 W. 107th St., 6A
New York, NY 10018

Roger W. Pecha
Conn Q. Davis
Jenkins & Kling, P.C.
150 North Meramec, Suite 400
St. Louis, MO 63105
*Attorneys for Intervenor*
*St. Louis Title, LLC*

13SM05-236 kei.

P261336

LEX–SERV    SANDBERG PHOENIX & VON GONTARD, P.C.
IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI
------------------------------------------------------------
RESTORATION ST LOUIS INC

                                             PLAINTIFF

                        – vs –

3RD ST IA, LLC

                                             DEFENDANT
------------------------------------------------------------

index No.  13SL–CC00644
Date Filed

Office No. 3307
Court Date.

            STATE OF NEW YORK, COUNTY OF NEW YORK :SS:

**TASHA L THOMAS** being duly sworn, deposes and says; I am over 18 years of age, not a party to
this action, and reside in the State of New York. That on the **13TH** day of **MARCH, 2013** 12:07
**PM** at

            37 SPRAIN VALLEY ROAD ATTN: NITIN JOBANPUTRA
            SCARSDALE NY 10583
I served a true copy of the **SUMMONS AND PETITION,**
upon **3RD ST IA, LLC**
the **DEFENDANT** therein named by delivering to, and leaving personally with
**NITIN JOBANPUTRA, AUTHORIZED TO ACCEPT**
a true copy of each thereof.
            Deponent describes the person served as aforesaid to the best of
deponent's ability at the time and circumstances of the service as follows.

SEX: **FEMALE** COLOR: **BROWN** HAIR: **BLACK**
APP.AGE: **43** APP. HT: **5/6** APP. WT: **160**
OTHER IDENTIFYING FEATURES

# FILED

**MAR 2 2 2013**

**JOAN M. GILMER**
CIRCUIT CLERK, ST. LOUIS COUNTY

COMMENTS:

Sworn to before me this
15TH day of MARCH, 2013

JEFFREY RUBELL
Notary Public, NASSAU COUNTY
    01RU6216027
Qualified in NASSAU COUNTY
Commission Expires 01/11/2014

TASHA L THOMAS
Empire Lawyers Service, LLC
d/b/a Aetna Judicial Service
225 BROADWAY, SUITE 1802
NEW YORK, NY, 10007
Reference No: 3-L-S-261336

RESTORATION ST. LOUIS, INC.    )
          )
       Plaintiff,      )
          )     Cause No.    13SL-CC00644
v.          )
          )     Division No.  8
3RD ST. IA LLC, et. al.,     )
          )
       Defendants.   )

## ST. LOUIS TITLE, LLC'S MOTION TO INTERVENE BY RIGHT OR, IN THE ALTERNATIVE, BY PERMISSION

COMES NOW Intervener St. Louis Title, LLC, by and through counsel, pursuant to Rule 52.12(a) of the Missouri Rules of Civil Procedure, or, alternatively, pursuant to Rule 52.12(b) of the Missouri Rules of Civil Procedure, and for its Motion to Intervene, states to this Honorable Court as follows:

1.    Plaintiff Restoration St. Louis, Inc. has filed the instant action claiming breach of contract as to Defendant 3rd St. IA LLC.

2.    Plaintiff alleges, generally, that it is entitled to $180,000.00 in damages which constitutes a return of the earnest money related to a real estate contract for certain property in Davenport, Iowa, as a result of Defendant's breach of such contract.

3.    Intervener is the escrow agent for the transaction at issue and currently holds $180,000.00 in earnest money for the benefit of the parties (the "Escrow Account").

4.     Intervener seeks to intervene in this Action for the purpose of interpleading the Escrow Account into the registry of this Court, to allow the Court to disburse the funds as it may deem appropriate, and to provide Intervener with a discharge of potential liability.

5.     Intervener seeks to intervene pursuant to Rule 52.12(a) or, alternatively, pursuant to Rule 52.12(b), in that this dispute presents common questions of law or fact, Intervener is a necessary party to the dispute at issue, and as a matter of judicial economy, as Intervener will be forced to file another action regarding the same transaction if its Motion to Intervene is denied.

6.     A copy of the Intervener's proposed Counterclaim and Crossclaim for Interpleader is attached hereto and incorporated herein by reference as Intervener's Exhibit "A."

WHEREFORE, Intervener St. Louis Title, LLC prays that it's Motion to Intervene be granted; that Intervener St. Louis Title, LLC be granted leave to file a Counterclaim and Crossclaim in substantial conformity with the proposed Counterclaim and Crossclaim attached hereto as Intervener's Exhibit "A," and for such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

JENKINS & KLING, P.C.

By:_____
     Roger W. Pecha          #41853
     Conn Q. Davis           #62835
     150 North Meramec, Suite 400
     St. Louis, MO 63105
     (314) 721-2525 Phone
     (314) 721-5525 Facsimile
     Rpecha@jenkinskling.com
     Cdavis@jenkinskling.com
     *Attorneys for Intervener St. Louis Title, LLC*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served upon Plaintiff by depositing same in the U.S. Mail, postage prepaid, addressed to:

Aaron D. French, Esq.
Jesse B. Rochman, Esq.
Sandberg Phoenix & von Gontard P.C.
600 Washington Avenue, 15th Floor
St. Louis, MO 63101-1313
*Attorneys of Record for Plaintiff*

3RD ST. IA LLC
ATTN: Nitin Jobanputra
37 Sprain Valley Road
Scarsdale, NY 10538

3RD ST. IA LLC
ATTN: Parag Meta
70 W. 107th St., 6A
New York, NY 10018

this _8_ day of _March_ , 2013.

_Kathleen A. Burgess_

# IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## TWENTY-FIRST JUDICIAL CIRCUIT COURT
## STATE OF MISSOURI

RESTORATION ST. LOUIS, INC.     )
)
          Plaintiff,          )
)
v.                           )     Cause No.    13SL-CC00644
)
3RD ST. IA LLC, et. al.,       )     Division No.  8
)
          Defendants.    )

## ST. LOUIS TITLE, LLC'S COUNTERCLAIM AND CROSSCLAIM FOR INTERPLEADER

COMES NOW Intervener St. Louis Title, LLC pursuant to Rule 52 of the Missouri Rules of Civil Procedure, and for its Counterclaim against Plaintiff Restoration St. Louis, Inc. and Cross Claim against Defendant 3rd St. IA LLC for Interpleader, states to this Honorable Court as follows:

1.    At all times relevant herein, Intervener St. Louis Title, LLC was and is a corporation duly organized and existing under the laws of the State of Missouri, with its principal place of business in the County of St. Louis, State of Missouri.

2.    At all times relevant herein, Plaintiff Restoration St. Louis, Inc. was a Missouri corporation with its principal place of business in the County of St. Louis, State of Missouri.

3.    At all times relevant herein, Defendant 3rd St. IA LLC was a New York limited liability company with its principal place of business in Scarsdale, New York.

4.    Jurisdiction and venue are proper in this Court in that the *res* which is the subject of this action, namely the $180,000.00 escrow account, is located in the County of St. Louis, State of

1

EXHIBIT A

Missouri, and because the parties entered into a contract in the County of St. Louis, State of Missouri.

5.       On or about April 25, 2012 Plaintiff Restoration St. Louis, Inc. and Defendant 3rd St. IA LLC entered into a contract whereby Plaintiff agreed to purchase, and Defendant agreed to sell, certain real estate located at 131 West 3rd Street, Davenport, Iowa, 52801 (the "Real Estate Contract"). A true and accurate copy of the Real Estate Contract is attached as **Exhibit "A"** to Plaintiff's Petition.

6.       Pursuant to the terms of the Real Estate Contract and subsequent negotiations of the parties, Plaintiff tendered the sum of $180,000.00 (the "Escrow Funds") to St. Louis Title, LLC which was received and deposited by St. Louis Title, LLC as escrow agent, to be held in escrow to secure the performance of the parties' various obligations under the Real Estate Contract.

7.       A dispute has arisen between Buyer and Seller with respect to the Escrow Funds, and Buyer and Seller have made competing and conflicting claims against St. Louis Title, LLC for return of the Escrow Funds.

8.       As a result of these competing and conflicting claims, St. Louis Title, LLC is uncertain as to which party should receive the Escrow Funds, and St. Louis Title, LLC is exposed to multiple and conflicting liability if St. Louis Title, LLC were forced to determine on its own who should receive the Escrow Funds.

9.       As a result of the potential for multiple liability, St. Louis Title, LLC desires to tender and is ready, willing and able to tender the Escrow Funds to the Court to deposit into the Court's Registry to disburse in a manner as the Court may determine is proper.

10.     Upon depositing the Escrow Funds into the registry of the Court, St. Louis Title, LLC is entitled to its attorneys' fees and an order discharging St. Louis Title, LLC from further liability to any party as a result of this dispute.

WHEREFORE, Defendant St. Louis Title, LLC prays this Honorable Court grant its Petition in Interpleader and enter its order granting relief to St. Louis Title, LLC as follows:

a)      That Defendant St. Louis Title, LLC be granted leave to interplead the Escrow Funds into the Registry of the Court to be disbursed at the Court's discretion as the Court directs; and

b)      That upon presentation of the Escrow Funds to the Court Registry, that Defendant St. Louis Title, LLC be discharged from any further liability to any party as a result of this action; and

c)      That Defendant St. Louis Title, LLC be awarded the cost of this proceeding, including its reasonable attorneys' fees; and

d)      For such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

JENKINS & KLING, P.C.


By:_____
        Roger W. Pecha          #41853
        Conn Q. Davis           #62835
        150 North Meramec, Suite 400
        St. Louis, MO 63105
        (314) 721-2525 Phone
        (314) 721-5525 Facsimile
        Rpecha@jenkinskling.com
        Cdavis@jenkinskling.com

*Attorneys for Intervener St. Louis Title, LLC*

3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served upon Plaintiff by depositing same in the U.S. Mail, postage prepaid, addressed to:

Aaron D. French, Esq.
Jesse B. Rochman, Esq.
Sandberg Phoenix & von Gontard P.C.
600 Washington Avenue, 15th Floor
St. Louis, MO 63101-1313
*Attorneys of Record for Plaintiff*

3RD ST. IA LLC
ATTN: Nitin Jobanputra
37 Sprain Valley Road
Scarsdale, NY 10538

3RD ST. IA LLC
ATTN: Parag Meta
70 W. 107th St., 6A
New York, NY 10018

this _____ day of _____, 2013.

_____

**IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS**
**TWENTY-FIRST JUDICIAL CIRCUIT COURT**
**STATE OF MISSOURI**

13 MAR -8 PH 3: 41

| | | |
|---|---|---|
| RESTORATION ST. LOUIS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 13SL-CC00644 |
| v. | ) | |
| | ) | Division No. 8 |
| 3RD ST. IA LLC, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY OF APPEARANCE

COME NOW Roger W. Pecha, Conn Q. Davis, and the law firm of Jenkins & Kling, P.C. and hereby enter their appearance on behalf of Intervenor St. Louis Title, LLC in the above styled matter.

Respectfully submitted,

JENKINS & KLING, P.C.

By: _____

Roger W. Pecha      #41853
Conn Q. Davis      #62835
150 North Meramec, Suite 400
St. Louis, MO 63105
(314) 721-2525 Phone
(314) 721-5525 Facsimile
Rpecha@jenkinskling.com
Cdavis@jenkinskling.com

*Attorneys for Intervener St. Louis Title, LLC*

1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served upon Plaintiff by depositing same in the U.S. Mail, postage prepaid, addressed to:

Aaron D. French, Esq.
Jesse B. Rochman, Esq.
Sandberg Phoenix & von Gontard P.C.
600 Washington Avenue, 15th Floor
St. Louis, MO 63101-1313
*Attorneys of Record for Plaintiff*

3RD ST. IA LLC
ATTN: Nitin Jobanputra
37 Sprain Valley Road
Scarsdale, NY 10538

3RD ST. IA LLC
ATTN: Parag Meta
70 W. 107th St., 6A
New York, NY 10018

this ___8___ day of ____March____, 2013.



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>TOM W DE PRIEST JR | Case Number: 13SL-CC00644 |
|---|---|
| Plaintiff/Petitioner:<br>RESTORATION ST LOUIS INC | Plaintiff's/Petitioner's Attorney/Address:<br>JESSE B ROCHMAN<br>600 WASHINGTON AVENUE<br>15TH FLOOR<br>SAINT LOUIS, MO 63101-1313 |
| vs. | |
| Defendant/Respondent:<br>3RD ST IA LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>7900 CARONDELET AVE<br>CLAYTON, MO 63105 |
| Nature of Suit:<br>CC Breach of Contract | |
| | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: 3RD ST IA LLC
                    Alias:

NITIN JOBANPUTRA                37 SPRAIN VALLEY RD
                           SCARSDALE, NY 10583

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

28-FEB-2013
Date

Further Information:
JMC

*ST. LOUIS COUNTY*

_____
Clerk

## Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by: (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    ☐ other (describe) _____

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
I am: (check one) ☐ the clerk of the court of which affiant is an officer.
                 ☐ the judge of the court of which affiant is an officer.
                 ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
*(Seal)*          ☐ authorized to administer oaths. (use for court-appointed server)

_____
Signature and Title

**Service Fees, if applicable**

| Summons | $ _____ |
|---|---|
| Non Est | $ _____ |
| Mileage | $ _____ ( _____ miles @ $ _____ per mile) |
| Total | $ _____ |

*See the following page for directions to clerk and to officer making return on service of summons.*

## Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54. The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered. The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service. The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy. The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy. If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons. This form is not for use in attachment actions. (See Rule 54.06, 54.07 and 54.14)

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

In the

# CIRCUIT COURT
## Of St. Louis County, Missouri

13SL-0~~~~5

RECEIVED
CIRCUIT COURT
OF
ST. LOUIS
COUNT

2013 FEB 22 PH 3: 59

JOAN M. GILMER
CIRCUIT CLERK

For File Stamp Only

**Restoration St. Louis, Inc.**
Plaintiff/Petitioner

vs.

**3rd St. IA LLC**
Defendant/Respondent

Date **2/22/13**

Case Number

Division

8

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now ___*Plaintiff, Restoration St. Louis, Inc.*___, pursuant
Requesting Party

to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

**Lex Serv, 225 Broadway, Ste 1802, New York, NY** (212)1661-1180
Name of Process Server                          Address                                    Telephone
                                                                    10007

**Jeff Rubell**
Name of Process Server          Address or in the Alternative                    Telephone

Name of Process Server          Address or in the Alternative                    Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties. This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE: **3rd St. IA LLC**
Name
**Nitton Johanputra, 37 Spain Valley Rd**
Address
**Scarsdale, NY 10583**
City/State/Zip

SERVE:
Name

Address

City/State/Zip

SERVE:
Name

Address

City/State/Zip

SERVE:
Name

Address

City/State/Zip

Appointed as requested:
**JOAN M. GILMER**, Circuit Clerk

By _____
Deputy Clerk
**February 28 2013**
Date

Attorney/Plaintiff/Petitioner

Bar No.

Address

Phone No.                          Fax No.

CCADM62   Rev. 03/06        WHITE – File        YELLOW–Special Process Server    PINK - Attorney/Petitioner

## TWENTY-FIRST JUDICIAL CIRCUIT COURT
## ST. LOUIS COUNTY, MISSOURI

RESTORATION ST. LOUIS, INC.,

        Plaintiff,

v.

3RD ST. IA LLC,

**Issue Summons:**
Nitin Jobanputra
37 Sprain Valley Rd.
Scarsdale, NY 10583

Parag Mehta
70 W 107 St. 6A
New York, NY 10018

        Defendant.

Cause No.:
Division:

**JURY TRIAL DEMANDED**

Serve by special process server

Serve by special process server

RECEIVED CIRCUIT COURT OF ST. LOUIS COUNTY 2013 FEB 22 PM 3: 59

### Petition for Breach of Contract

Plaintiff Restoration St. Louis, Inc. ("Plaintiff"), by and through its attorneys Sandberg Phoenix & von Gontard PC, brings the following causes of action against Defendant 3rd St. IA LLC ("Defendant"):

### PARTIES

1.    Plaintiff is a Missouri corporation authorized to do business in Missouri, and in fact doing business in St. Louis County, Missouri. Plaintiff's principal place of business is situated in St. Louis City and located at Coronado Place, 3701 Lindell Boulevard, St. Louis, Missouri 63108.

2.    Defendant is a New York limited liability company doing business in St. Louis County, Missouri.. Defendant may be served at 37 Sprain Valley Road, Scarsdale, NY 10583.

3.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to Article V, Section 14 of the Missouri Constitution section 478.070, which grant Missouri circuit courts original jurisdiction over all civil cases and matters.

5.      Venue is proper in this Court pursuant to section 508.010.4 because Plaintiff was first injured by Defendant's wrongful acts in St. Louis County. Alternatively, venue is proper in this Court pursuant to section 508.010.2(4) because Defendant is a nonresident of Missouri.

## FACTS COMMON TO ALL COUNTS

6.      On or about April 25, 2012, Plaintiff and Defendant entered into a Purchase and Sale Agreement ("Contract"), wherein Defendant agreed to sell to Plaintiff certain real property commonly known as 131 West Third Street, Davenport, Iowa 5201 ("Property"). A true and correct copy of the Agreement is attached as **Exhibit A** and incorporated herein by this reference.[1]

7.      Pursuant to section 1.3 of the Contract, Defendant directed Plaintiff to deliver $180,000 ("Earnest Money") to Defendant's escrow agent, St. Louis Title, LLC, located at 7701 Forsyth Boulevard, Suite 200, Clayton, Missouri 63105 ("Escrow Agent").

8.      Plaintiff delivered the Earnest Money to Defendant's Escrow Agent as follows: (i) $54,000 on or before 5:00 p.m. CST seven working days after the Effective Date; (ii) and $126,000 within five business days after the expiration of the Contingency Date. True and correct copies of receipts confirming delivery of the money to Defendant's Escrow Agent are attached as **Exhibit B** and incorporated herein by this reference.

---

[1] All capitalized terms shall have the meaning ascribed to them in the Contract unless defined otherwise herein.

9.     Pursuant to section 4.3 of the Contract, Defendant was required to deliver the Property free and clear of any environmental hazards and contaminations, including asbestos, at Defendant's sole cost and expense prior to the Closing Date.

10.     Pursuant to section 1.7 of the Contract, the Closing Date was on or before January 28, 2013. The Closing Date was extended to February 8, 2013, by agreement of the parties to the Contract.

11.     Pursuant to section 1.7 of the Contract, the Closing was to take place in St. Louis County, Missouri.

12.     Defendant admitted on or about February 7, 2013, that remediation of all eviornmental hazards and contamination on the Property was not complete.

13.     Defendant failed to deliver the Property free and clear of any environmental hazards and contaminations prior to February 8, 2013.

14.     Pursuant to section 1.3(b)(4) of the Contract, Plaintiff gave Defendant written notice to Defendant on or about February 11, 2013, regarding Defendant's failure to deliver the Property free and clear of any environmental hazards and contaminations prior to February 8, 2013 ("Notice of Default"). A true and correct copy of the Notice of Default is attached as **Exhibit C** and incorporated herein by this reference.

15.     To date, Defendant has failed to deliver the Property free and clear of any environmental hazards and contamination.

16.     Pursuant to section 1.3(b) of the Contract, the Earnest Money was to be refunded and returned to Plaintiff by no later than February 18, 2013.

17.     Defendant has failed and currently refuses to refund and return Plaintiff's Earnest Money.

3

18.     Defendant has failed and currently refuses to instruct its Escrow Agent to refund and return the Earnest Money to Plaintiff.

19.     Without Defendant's instruction to release Plaintiff's Earnest Money, Defendant's Escrow Agent has failed and currently refuses to refund and return the Earnest Money to Plaintiff.

20.     To date, Plaintiff's Earnest Money is being held by Defendant's Escrow Agent in St. Louis County, Missouri.

21.     Plaintiff has made multiple demands upon Defendant for payment of the Earnest Money, but Defendant has failed to pay and/or direct its Escrow Agent to pay Plaintiff its Earnest Money as required by the Contract.

### COUNT I – BREACH OF CONTRACT

22.     Plaintiff incorporates and adopts paragraphs 1 through 18 of this Petition as if fully set forth in this Count.

23.     Defendant defaulted and breached the Contract by failing to deliver the Property free and clear of any environmental hazards and contaminations prior to February 8, 2013.

24.     Defendant defaulted and breached the Contract by failing and continuing to refuse to return and refund Plaintiff's Earnest Money.

25.     Defendant defaulted and breached the Contract by failing and continuing to refuse to instruct its Escrow Agent to return and refund Plaintiff's Earnest Money.

26.     Plaintiff has complied with all conditions precedent under the Contract, and is not now and never has been in breach of the Contract.

27.     Plaintiff has performed all obligations under the Contract.

28.     Defendant has never given Plaintiff written notice specifying any default or

4

failure of performance by Plaintiff as required by sections 1.7(b)(5) and 6.6.

29.    Plaintiff has made demand upon Defendant for payment of the Earnest Money, which payment has failed to be made.

30.    As a direct and proximate result of Defendant's failure to pay Plaintiff its Earnest Money, Plaintiff was damaged in the amount of $180,000 plus all interest that accrued and continues to accrue on the Earnest Money.

31.    Pursuant to section 6.2 of the Contract, Plaintiff is entitled to all costs, including reasonable attorneys' fees, costs and expenses.

WHEREFORE, Plaintiff prays this Court for its Order and Judgment declaring Defendant in default of the Contract; ordering a return and refund of the Earnest Money to Plaintiff; awarding Plaintiff $180,000 plus the interest that accrued thereon and continues to accrue; post-judgment interest; awarding Plaintiff its costs herein expended, including reasonable attorneys' fees; and for such other and further relief as this Court deems just under the premises.

SANDBERG PHOENIX & von GONTARD P.C.

By: _____
Aaron D. French, #50759
Jesse B. Rochman, #60712
600 Washington Avenue - 15th Floor
St. Louis, MO 63101-1313
314-231-3332
314-241-7604 (Fax)
afrench@sandbergphoenix.com
jrochman@sandbergphoenix.com

*Attorneys for Plaintiff*

# PURCHASE AND SALE AGREEMENT

This PURCHASE AND SALE AGREEMENT (the "Agreement") is made and entered into as of this 19th day of March, 2012, by and between Restoration St. Louis, Inc., a Missouri corporation (d/b/a Restoration Iowa), as buyer ("Buyer"), and 3rd St. IA LLC, a New York limited liability company, as seller ("Seller"). The "Effective Date" of this Agreement is the date on which this Agreement has been fully executed by both Seller and Buyer.

## ARTICLE I
## PURCHASE AND SALE

**1.1   Agreement to Sell and Purchase.** In accordance with and subject to the terms and conditions hereof, on the date of "Closing" (as hereinafter defined), the Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller, that certain real property commonly known and numbered as **131 West Third Street, Davenport, Iowa 52801 in the County of Scott (legal description on Seller's title and final survey to govern)** containing and including the improvements and fixtures thereon, and the easements, rights of way, access rights, and appurtenances and improvements thereto (all being hereinafter collectively referred to as the "Property").

**1.2   Purchase Price.** The purchase price (the "Purchase Price") to be paid to Seller for the sale of the Property to Buyer as provided for herein shall be the sum of One Million, Eight Hundred Thousand Dollar ($1,800,000.00). The Purchase Price shall be paid by Buyer, subject to credit and adjustment as hereinafter expressly provided. The Buyer shall also pay to the Seller additional compensation in the form of a note whereby Buyer is the maker and Seller is the payee (the "Note"). Buyer and Seller agree that the Note will contain the following terms:

- Principal amount of Six Hundred Thousand Dollars **($600,000.00).**
- Interest only note with interest calculated at seven and one half percent (7.5%).
- Term of five (5) years with the term beginning on the Closing Date (as defined herein) and with a maturity date five (5) years thereafter.
- Interest to be calculated on an annual basis and paid on the first day of January and paid in arrears. Interest shall be calculated pro rata in such cases that there is partial year such as:
  - The period between the Closing and issuance of the Note and the first (1st) interest payment is due the on the next calendar date of January 1.
  - The period between January 1 and the maturity date of the Note in the 5th year of the Note.
- Shall be compliant with the applicable Uniform Commercial Code that governs promissory notes. Buyer and Seller agree to further document the Note prior to Closing to memorialize the aforementioned terms and conditions.

*The note shall be unconditionally guaranteed as to payment by Buyer's principals, Amrit and Amy Gill.*

**1.3   Earnest Money.**

(a)   **Earnest Money Deposit.** On or before 5:00 p.m. C. D. T. seven (7) working days after the Effective Date, Buyer shall deliver the sum of Fifty Four Thousand dollars ($54,000.00) (the "Initial Earnest Money") to St. Louis Title Company (the "Title Company"). All of the

PLAINTIFF'S EXHIBIT A

Earnest Money shall be applied at Closing in the manner provided in Article III below. All of the Earnest Money deposited in good funds pursuant hereto shall be placed in an interest-bearing account, pursuant to the instructions of Buyer, with all interest accruing thereon being for the account of, and payable to Buyer. Within five (5) business days after the expiration of the Contingency Date (hereinafter defined), unless Buyer has terminated this Agreement pursuant to the provisions of Article III herein below, Buyer shall deposit the further sum of One Hundred Twenty Six Thousand Dollars ($126,000.00) with the Title Company as an additional deposit of earnest money (the "Additional Deposit") so that the Earnest Money totals One Hundred Eighty Thousand Dollars ($180,000.00). The Additional Deposit, together with the initial Earnest Money described above in this section, is collectively referred to herein as the "Earnest Money").

**(b)** **Disposition of Earnest Money; Remedies on Default.**

(1)    In the event that this Agreement is terminated on or before the **"Contingency Date"** under provisions in Article III hereof by reason of failure of the Due Diligence Contingencies Seller hereby directs and authorizes the Title Company to, and the Title Company shall, notwithstanding any contrary instructions that Seller may hereafter give, immediately return any and all Earnest Money to Buyer without further inquiry of any sort whatsoever in regard to the Seller, any broker or any other party in connection with this Agreement, and without requiring the execution of any further release or consent by any party whatsoever.

(2)    If the sale of the Property is closed by the **"Closing Date"** (as hereinafter defined), then all of the Earnest Money shall be applied against the Purchase Price payable under **Section 1.2** hereof.

(3)    If the sale of the Property is not closed by the Closing Date owing to failure of satisfaction of a **"Closing Condition"** hereof, then all of the Earnest Money shall be immediately refunded and returned to Buyer and Title Company is hereby directed to do so without further inquiry of any sort whatsoever in regard to the Seller, any broker or any other party in connection with this Agreement, and without requiring the execution of any further release or consent by any party whatsoever, and thence the parties shall have no further rights, duties or obligations hereunder, excepting obligations which, by their nature or terms, survive the termination of this Agreement. However, if the failure of any such Closing Condition also constitutes a default under or breach of the terms of this Agreement on the part of Seller, then Buyer may, at its option, pursue its rights and remedies that are provided hereunder in the event of a Seller default.

(4)    If the sale of the Property is not closed by the Closing Date owing to default hereunder by Seller or failure of performance hereunder by Seller, then Buyer shall give Seller written notice specifying the Seller's default or failure of performance, and Seller shall have five (5) business days after Seller's receipt of such notice to cure the default or failure of performance. In the event that Seller fails to cure the Seller's default or failure of performance within the five (5) day period, then the Earnest Money shall be immediately refunded and returned to Buyer; and, in addition, Buyer may enforce and exercise its rights and remedies that may be available at law or in equity.

(5)    If the sale of the Property is not closed by the Closing Date owing to failure of performance or default hereunder by Buyer, then Seller shall give Buyer written notice specifying the Buyer's default or failure of performance, and Buyer shall then have five (5) business days



after Buyer's receipt of such notice to cure the default or failure of performance. In the event that Buyer fails to cure the Buyer's default or failure of performance within the five (5) day period, then the Earnest Money shall be forfeited to and retained by Seller, as full liquidated damages for such default of Buyer. The parties hereto expressly acknowledge that it is impossible to more precisely estimate the damage to be suffered to Seller upon Buyer's default, and that retention of the Earnest Money as liquidated damages is intended not as a penalty, but as full liquidated damages. In the event the purchase and sale contemplated in this Agreement is not consummated because of Buyer's default, Buyer hereby waives and releases any right to (and hereby covenants that it shall not) sue Seller to recover the Earnest Money or any part thereof on the grounds that it is unreasonable in amount or that its retention by Seller is a penalty and not agreed upon and reasonable liquidated damages.

**1.4** **Payment of Purchase Price.** Buyer shall, on the Closing Date, pay Seller the Purchase Price by wire transfer or bank check of immediately available funds, subject to credit for the Earnest Money and subject to credit and adjustment as provided in **Section 1.5** below or elsewhere herein.

**1.5** **Adjustments.** The parties agree that the following items shall be credited, debited, prorated and otherwise adjusted, and the resulting calculation shall be an adjustment to the Purchase Price payable at Closing pursuant to **Section 1.2** hereof. Where appropriate, such adjustments shall be made on the basis of a year of 12 months, 30 days to the month, Seller to have the last day, unless otherwise provided.

    (a)    General property and real estate taxes (state, county, municipal, school and fire district, and other local real estate taxes and personal property taxes) and assessments payable in respect of the Property for the calendar year in which the Closing Date occurs shall be prorated, on a calendar year basis, Seller to pay for the Closing Date. If at the time of the Closing, the current tax bills and assessments for the Property for the calendar year in which Closing occurs have not been received, then the parties shall prorate based on the most recent available information regarding assessed value and applicable tax rate which shall be final. Seller shall cause all taxes for all prior tax fiscal years to be paid at or prior to Closing.

    (b)    Buyer shall be entitled to all rental income and other income from the Property for the period from and after the day after the Closing Date and shall be responsible for all expenses of the Property attributable to the period from and after the day after the Closing Date. Seller shall be entitled to all rental and other income from the Property attributable to the period prior to (and including) the Closing Date and shall be responsible for all expenses of the Property attributable to the period prior to (and including) the time of Closing on Closing Date. Accordingly, all monthly rental income and other income and all expenses of the Property, including by way of example, and not by way of limitation, all rental payable under the Leases and all unmetered utility charges shall be prorated through the Closing Date, Seller to have and pay for the Closing Date. In the event, on the date of Closing, the precise figures necessary for any of the foregoing adjustments are not capable of determination, the adjustments shall be made on the basis of the good faith estimates of the parties and shall be final. The covenants contained herein with respect to adjustments shall survive Closing, where applicable.



(c)     Except as expressly provided elsewhere in this Agreement, Buyer and Seller shall pay their own respective costs and expenses, including attorneys' fees, incidental to the drafting, negotiation, and administration of this Agreement.

**1.6     Possession at Closing.** Seller shall transfer possession of (and title to) the Property to Buyer on the Closing Date.

**1.7     Closing Date.** Upon and subject to all of the terms and conditions contained in this Agreement, the "Closing" of the transaction contemplated hereby shall be ninety (90) days after the Contingency Date (the "Closing Date") unless a different date is agreed to in writing by the parties hereto. Buyer and Seller shall close at St. Louis Title Company.

**1.8     Documents at Closing.**

(a)     At Closing, Seller shall execute and deliver to Buyer the following:

(1)     A fully executed and recordable Special Warranty Deed (in a form acceptable to Buyer's counsel), conveying to Buyer marketable and insurable fee simple title to the Property, free and clear of all liens and encumbrances, subject only to the following "Permitted Encumbrances", to-wit: (A) general real estate taxes and general assessments, if any, for the year in which sale is closed, and which are a lien on the Property, but are not yet due and payable (except for the provisions provided for in Section 1.4(a)) and (B) easements, restrictions, reservations, conditions and rights of way of record as of the date of this Agreement.

(2)     Any plans, specifications, surveys, blueprints and engineering and/or architectural drawings relating to the Property in Seller's actual possession.

(3)     Such affidavits and the like from Seller as may reasonably be required by the Title Company, on or in forms customarily used by the Title Company in order to issue the owner's policy of title insurance, or as may be reasonably required by Buyer.

(4)     Seller shall transfer and assign to Buyer any maintenance records and, to the extent they are assignable, any warranty agreements in force at time of closing to the extent of Seller's actual possession of either.

(b)     At the Closing, each of the parties shall execute, provide and deliver to the other party and to the Title Company: (1) such indicia of authority and related customary documents and instruments as may be required by the Title Company or as may be reasonably requested by the other party; and (2) such other documents and instruments as are necessary to consummate the transactions contemplated by this Agreement. At or prior to the Closing, Buyer shall pay the cost of obtaining any policies of title insurance regarding the Property, recording and filing fees regarding the Deed, all costs and expenses incurred by Buyer for survey and other investigation of the Property, all costs and expenses incurred by Buyer in connection with obtaining its acquisition loan and other financing for the Property obtained by Buyer, and any other fees and costs customarily borne by purchasers as "closing costs" in Davenport, Iowa. At the Closing, Seller shall pay the cost of recording and filing fees regarding the release of any deeds of trust or other security documents relating to Seller's financing encumbering the Property, and any other fees and costs customarily borne by sellers as "closing costs" in Davenport, Iowa. The cost of any escrow or closing fees charged by the Title Company shall be shared equally between Buyer and

Seller.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES; INDEMNIFICATION

**2.1** **Seller's AS-IS Limited Warranties and Representations as to the Property.** Buyer acknowledges and covenants that Buyer shall have **ample opportunity to thoroughly inspect** the Property that Buyer is purchasing the Property in its AS-IS condition (except for those provisions of Section 4.3), and that Seller has not occupied or operated the Property. Seller makes the following representations and warranties with respect to the ownership of the Property only, each of which representations is true and correct on the Effective Date (as applicable), and will be true and correct on the date of Closing, and each of which shall survive the Closing pursuant to Section 2.4, below.

(a) As of the Effective Date, and at all times thereafter until Closing, Seller shall be the owner of the marketable fee simple title to the Property, subject only to the Permitted Encumbrances and all deeds of trust and mortgages as well as other financing documents now of record. Upon Closing, (1) Seller will obtain the payment and terminate all deeds of trust, mortgages and other financing documents now of record; and (2) Seller's title to the Property then will be free and clear of all trust deeds, leases, mortgages, liens, easements, restrictions and encumbrances of every kind and nature, excepting only the Permitted Encumbrances.

(b) As of Closing, other than the tenancies that are in place as of the Effective Date, there will be no tenancies or occupancies affecting the Property or persons in possession of any part thereof by Seller to Buyer and any lease or lease with option to purchase agreements will be terminated at or prior to closing and termination documentation provided to Buyer at Closing.

(c) There are no service, supply, maintenance, leasing or any other agreements (to which Seller is a party) affecting the Property.

All representations and warranties of Seller shall be true, accurate and complete as of Closing, and all covenants and agreements of Seller to be complied with or performed prior to or at Closing shall have been complied with and/or performed.

**2.2** **Survival of and Limitations with Respect to Seller's Warranties and Representations.** All of the representations and warranties of Seller under **Section 2.1** hereof shall inure to the benefit of Buyer, its permitted successors and assigns, shall be considered made as of the date hereof and made and renewed as of Closing Date, and shall survive the Closing of the purchase and sale of the Property contemplated hereby. Except as otherwise expressly set forth above in **Section 2.1** hereof, the Property being conveyed hereunder is being sold in an "as is" condition without any warranty, express or implied.

**2.3** **Buyer's Representations and Warranties.** Buyer represents, warrants and covenants to Seller as follows, which representations and warranties shall survive Closing hereunder and shall inure to the benefit of Seller, its successors and assigns and shall be considered made as of the date hereof and as of Closing Date:



(a) Buyer is a Missouri Corporation, organized and existing under the laws of the State of Missouri, registered to do business in the State of Iowa, and the execution and delivery hereof by Buyer is fully authorized by all requisite authority, and no other consents by any other party are required for Buyer to execute and deliver this Agreement.

(b) This Agreement constitutes the legal, valid and binding obligation of Buyer enforceable in accordance with its terms, subject to limitations imposed by any applicable bankruptcy, insolvency, reorganization and other laws affecting the validity or enforcement of claimants' rights generally and to the effect of general principles of equity.

(c) Performance of this Agreement by Buyer will not result in any breach of, or constitute any default under, any agreement or other instrument to which Buyer is a party or by which Buyer is bound.

(d) All of the foregoing representations and warranties of Buyer hereunder shall inure to the benefit of Seller, its permitted successors and assigns, shall be considered made as of the date hereof and made and renewed as of Closing Date, shall survive the Closing of the purchase and sale of the Property contemplated hereby.

**2.4    Seller's Representations and Warranties.** Seller represents, warrants and covenants to Buyer as follows, which representations and warranties shall survive Closing hereunder and shall inure to the benefit of Buyer, its successors and assigns and shall be considered made as of the date hereof and as of Closing Date:

(a) Seller is a New York limited liability company, organized and existing under the laws of the State of New York, and the execution and delivery hereof by Seller is fully authorized by all requisite authority, and no other consents by any other party are required for Seller to execute and deliver this Agreement.

(b) This Agreement constitutes the legal, valid and binding obligation of Seller enforceable in accordance with its terms, subject to limitations imposed by any applicable bankruptcy, insolvency, reorganization and other laws affecting the validity or enforcement of claimants' rights generally and to the effect of general principles of equity.

(c) Performance of this Agreement by Seller will not result in any breach of, or constitute any default under, any agreement or other instrument to which Seller is a party or by which Seller is bound.

(d) All of the foregoing representations and warranties of Seller hereunder shall inure to the benefit of Buyer, its permitted successors and assigns, shall be considered made as of the date hereof and made and renewed as of Closing Date, shall survive the Closing of the purchase and sale of the Property contemplated hereby.



## ARTICLE III
## CONDITIONS TO CLOSING

**3.1** **Due Diligence Contingencies.** The obligation of Buyer to consummate the transactions provided for in this Agreement shall be subject to the satisfaction of each of the following conditions (the "Due Diligence Contingencies"), on or before one hundred eighty (180) days after the Effective Date of this contract, (which date is hereinafter referred to as the "Contingency Date"); subject to the right of Buyer (by written notice to Seller) to sooner waive one or more of the Due Diligence Contingencies. The following are the "Due Diligence Contingencies," to-wit:

(a) Buyer (at Buyer's sole cost and expense) shall have obtained a commitment (the "Title Commitment") in favor of Buyer for an owner's policy of title insurance from the Title Company with respect to the Property, which Title Commitment shall be in the amount of the Purchase Price and shall show Seller as the owner of marketable fee simple title to the Property, with exceptions only for: (1) the standard preprinted exceptions; (2) the Permitted Encumbrances; (3) mortgages, deeds of trust and other financing instruments of record (to be paid, discharged and released by Seller at Closing); and exceptions as shall be acceptable to Buyer, in its sole discretion, and Buyer shall have reviewed and approved (as satisfactory to Buyer, in its sole discretion) in writing the terms of the Title Commitment, and such exceptions as may be disclosed thereon.

(b) Buyer (at Buyer's sole cost and expense) may obtain, review and approve, (in its sole discretion) an updated survey of the Property (Seller shall deliver any surveys of the Property in its possession to Buyer within ten (10) days of Seller's execution hereof), which survey may, among other things, verify the acreage of the Property and the legal description on the commitment for the title insurance obtained pursuant to **Section 3.1(a)** as the accurate legal description of the Property.

(c) Buyer (at Buyer's sole cost and expense) shall perform any and all physical inspections of the Property as Buyer deems necessary including but not limited to structural, mechanical, building envelope, electrical, roof, including ADA compliances (all at Buyer's option and expense). Inspections shall be satisfactory to Buyer in its sole and complete discretion.

(d) Buyer may (at Buyer's sole cost and expense) obtain an environmental report of the Property satisfactory to Buyer in Buyer's sole and complete discretion that the Property does not contain any environmental hazards (including but not limited to asbestos, underground storage tanks, pollutants, contaminants or other harmful or hazardous substances). For purposes of this Section 3.1(d), an environmental hazard is a toxic or hazardous substance level found above those standards set as acceptable by the United States Environmental Protection Agency, the Iowa Department of Natural Resources, or other applicable government agencies.

**3.2** **Failure of Satisfaction of Buyer's Due Diligence Contingencies.** On or before the Contingency Date, the Buyer shall give Seller written notice of the failure of the Due Diligence Contingencies, or of satisfaction or waiver or removal of the Due Diligence Contingencies. If Buyer gives Seller notice of the failure of the Due Diligence Contingencies by the Contingency Date, then the Agreement shall be deemed terminated. If Buyer fails to give Seller any notice with



respect to the Due Diligence Contingencies by the Contingency Date, then all Due Diligence Contingencies shall be deemed to have been waived and the parties shall proceed to Closing subject to the terms and conditions of this Agreement. If the Agreement is duly and timely terminated by reason of failure of Due Diligence Contingencies, then all Earnest Money Deposits shall be refunded to Buyer as specified in **Section 1.3** , and thence the parties shall have no further rights, duties or obligations hereunder, excepting obligations, which, by their nature or terms, survive the termination of this Agreement.

**3.3** **Satisfaction of Buyer's Due Diligence Contingencies**. At any time on or before the Contingency Date, the Buyer may give Seller written notice of the satisfaction or waiver or removal of the Due Diligence Contingencies, in which event the Due Diligence Contingencies shall be deemed satisfied, waived and removed.

**ARTICLE IV**
**COVENANTS OF SELLER**

Seller covenants and agrees that from and after the Effective Date of this Agreement and until the date of Closing:

**4.1** **Access to Property**. Seller will allow Buyer and its agents from and after the date of this Agreement continuing access at reasonable times to the Property (including, without limitation, the right to enter the Property for the purpose of conducting inspections or satisfying Due Diligence Contingencies. Buyer shall indemnify Seller against any and all costs, damage, losses, expenses and other consequences of Buyer's access to the Property (except to the extent such cost, damage, losses, expenses or consequences were proximately caused by Seller) and Buyer shall not disclose any facts or impressions resulting from such access to the Property to any third party without Seller's express written permission.

**4.2** **Title Covenants**. At all times until Closing, Seller shall maintain the legal title to the Property free and clear of any and all defects, liens, and encumbrances of every kind and nature other than the Permitted Encumbrances and other financing liens that will be removed by Seller by the payment of money at or before Closing.

**4.3** **Environmental**. Seller shall deliver the property free and clear of any environmental hazards and contaminations at its sole cost and expense prior to the Closing Date. Seller represents that is has identified hazards at the Property and has initiated a remediation plan, hired contractors, and registered the site for cleanup with the State of Iowa. For purposes of this section hazards and contaminates are include but are not limited to asbestos, underground storage tanks, pollutants, contaminants or other harmful or hazardous substances affecting the property. Seller agrees that it will provide all available documentation of its remediation plan to Buyer prior to Closing.



## ARTICLE V
## CASUALTY; CONDEMNATION

**5.1** **Risk of Loss; Casualty.** Risk of loss by fire or other casualty is assumed by Seller until Closing. In the event of loss or damage to the Property between the date of this Agreement and Closing Date, by fire or other casualty, Seller shall immediately give Buyer notice of such occurrence. If the cost of repairing the damage is reasonably estimated to exceed One Hundred Thousand Dollars ($100,000.00), then Buyer may, within fifteen (15) days after receipt of such casualty notice, elect to (a) terminate this Agreement, in which event all Earnest Money Deposits shall be returned forthwith to Buyer, all obligations of the parties hereunder shall cease, and this Agreement shall have no further force and effect, or (b) close the transaction contemplated hereby as scheduled (except that if the Closing Date is less than fifteen (15) days following Buyer's receipt of such casualty notice, Closing shall be delayed until Buyer makes such election). If the cost of repairing the damage is reasonably estimated to be $100,000.00 or less, then the transaction contemplated hereby shall close as scheduled (except that if the Closing Date is less than fifteen (15) days following Buyer's receipt of such casualty notice, Closing shall be delayed until the 15th day after the casualty notice). In the event that the transaction contemplated hereby closes notwithstanding such destruction or damage, Buyer shall have the right to participate in the adjustment and settlement of any insurance claim relating to said damage, and Seller shall assign and/or pay to Buyer at Closing all insurance proceeds (and other related chooses in action, if any) collected or claimed by either Seller with respect to said loss or damage plus any deductible or self-insured amount. Upon Closing, Buyer shall be deemed to have waived any representation or warranty of Seller with respect to the physical condition of the Property. In the event that Buyer and Seller cannot agree on an estimated reasonable cost for the repairs necessitated by such damage or destruction, for purposes of this **Section 5.1**, then Buyer and Seller shall each, at their own expense, proceed (if they have not already done so) to obtain a bid for the cost of repairing such damage and destruction from reputable, local contractors. The bid obtained by each party shall be in a form which is freely assignable to the other party. The bid received which is lower in amount shall govern and shall be used as the cost of repair for purposes of this **Section 5.1**. Closing shall be postponed as reasonably necessary to enable the foregoing process of obtaining bids, provided each party is proceeding in good faith and as expeditiously as possible. Should Buyer fail to proceed (or fail to continue to proceed) in good faith and as possible, Seller may terminate this Agreement upon written notice to Buyer.

**5.2** **Condemnation.** If, during the term of this Agreement, any portion of the Property shall be taken by eminent domain, or is the subject of eminent domain proceedings threatened or commenced, Seller shall promptly notify Buyer thereof, and immediately provide Buyer with copies of any written communication from any condemning authority. If any of said events occur then, in that event, Buyer shall have the right to rescind the Agreement, in which event, this Agreement shall become null and void, and all Earnest Money Deposits shall be immediately returned to Buyer. If any of said events occur and Buyer still desires to Close, (a) if the transfer to the condemning authority takes place prior to Closing hereunder, the remainder of the Property shall be conveyed to Buyer at Closing; (b) if the transfer to the condemning authority has not taken place prior to Closing, the entire Property shall be conveyed to Buyer at Closing hereunder; (c) if Seller has received payment for such condemnation or taking prior to the Closing hereunder, the amount of such payment shall be a credit against the Purchase Price payable by Buyer hereunder; and (d) if Seller has not received such payment at the time of Closing, Seller shall assign to Buyer all claims and rights on account of or arising out of such taking, including the



right to conduct any litigation in respect of such condemnation.

## ARTICLE VI
## MISCELLANEOUS PROVISIONS

**6.1**   **Tax-Free Exchange Provisions.**

(a)   **Tax Free Exchange By Seller.** Prior to Closing Buyer agrees to cooperate with Seller (and to enter into appropriate exchange contracts and agreements), at Seller's option, to restructure the sale of the Property pursuant to the Agreement so that Seller effects a simultaneous or deferred like-kind exchange of the Property for other property (the **"Exchange Property"),** in accordance with Section 1031 of the Internal Revenue Code and applicable regulations promulgated thereunder. Said like-kind exchange may be structured, at Seller's option, in any of the methods authorized by applicable law and regulations, provided that: **(1)** Buyer incurs no additional costs or expenses by reason of such like-kind exchange; **(2)** Seller agrees to hold Buyer harmless from any and all costs, expenses and liabilities incurred in connection with such like-kind exchange; **(3)** Seller agrees to and shall advance all monies, costs and expenses required in connection with such like-kind exchange (other than the Purchase Price for the Property under this Agreement, which Purchase Price Buyer shall pay on the date of the Closing hereunder); **(4)** Buyer shall not be required to execute any contracts to purchase the Exchange Property in connection with such tax-free exchange; and **(5)** Buyer shall not be required to take title to the Exchange Property. In connection with such exchange, Seller (without Buyer's consent being required) may assign this Agreement to a qualified § 1031 exchange intermediary (an **"Exchange Intermediary"**) selected by Seller; provided that such assignment of this Agreement by Seller to an Exchange Intermediary shall not release or relieve Seller of its obligations and agreements hereunder.

**6.2**   **Attorney's Fees.** In the event either party hereto brings against any other party an action at law or other proceeding permitted under the terms of this Agreement in order to enforce or interpret any of the terms, covenants or conditions hereof or any instrument executed pursuant to this Agreement or by reason of any breach or default hereunder or hereunder, the party prevailing in any such action or proceeding shall be paid all costs, including reasonable attorneys' fees, costs and expenses. This provision shall survive any termination of this Agreement.

**6.3**   **Assignment of Agreement.** This Agreement, and the rights and obligations hereunder, may not be assigned by Purchaser except to an entity controlled by or under common control of Purchaser, a subsidiary or an affiliate of Purchaser. In the event of any such assignment, such assignee shall assume the obligations of the original party designated as Purchaser hereunder and shall provide written evidence of such assumption to the Seller. Thereafter, the original Purchaser shall be released from its obligations hereunder. Seller expressly agrees to close the transaction contemplated hereunder with the permitted assignee of Purchaser. This Agreement may not be assigned by Seller.

**6.4**   **Binding Agreement.** This Agreement shall be binding on and shall inure to the benefit of the parties named herein and to their respective personal representatives, successors and permitted assigns.

**6.5** **Brokers and Commissions.** The parties agree that no brokers were involved in this Agreement and that no commissions are due and owing.

**6.6** **Notices.** All notices and requests permitted or required to be given hereunder shall be in writing and all such notices may be given: (a) by personal delivery, or (b) by nationally recognized overnight delivery service, or (c) by United States Certified Mail, Return Receipt Requested, Postage Prepaid, or (d) confirmed facsimile transmission. Notices shall be addressed to the parties at their respective addresses stated herein below or at such other address as such party shall designate in writing by notice given hereunder. If mailed as aforesaid, any mailed notice hereunder shall be deemed given on the third (3rd) business day after the date deposited in the U.S. Mails, as evidenced by the postmark. If given by nationally recognized overnight delivery service, notice hereunder shall be deemed given on the date received by the delivery service, as evidenced by its records. If given by confirmed telecopy (with proof of transmission), notice hereunder shall be deemed given on the date received, as shown by the receipt generated by the Sender's machine. Notwithstanding the foregoing, notices sent by any other means shall be deemed given on the date received or on which delivery is refused. Notices given by telecopy shall also be sent on the same date by one of the other methods of giving notice. Notices given in behalf of a party by its attorney shall be effective for and in behalf of such party, and shall be binding upon such party. Copies of notices to attorneys are for informational purposes only, and a failure of receipt of such copies of any notice shall not be deemed a failure to give notice; provided such copy- was actually sent as and when required hereunder.

|  |  |
|---|---|
| **If to Buyer:** | **With a copy to:** |
| Amrit Gill | Sam Estep |
| Restoration St. Louis, Inc. | Restoration St. Louis, Inc. |
| 3701 Lindell Boulevard | 3701 Lindell Boulevard |
| St. Louis, MO 63108 | St. Louis, MO 63108 |
| 314-446-4526 (telephone) | 314-446-4513 (telephone) |
| 314-446-4527 (facsimile) | 314-446-4531 (facsimile) |
| | |
| **If to Seller:** | |
| **Parag Mehta** | |
| 3RD ST IA LLC | |
| 70 W 107 ST 6A | |
| NEW YORK NY 10018 | |
| | |
| **With a copy to:** | |
| **Nitin Jobanputra** | |
| 3RD ST IA LLC | |
| 37 Sprain Valley Road | |
| Scarsdale NY 10583 | |

**6.7** **Nature of Representations, Warranties, Covenants, and Agreements.** Each and every representation and warranty and covenant and agreement made by the parties and contained in this Agreement or in any instrument, certificate or other document delivered pursuant to this

Agreement, shall be deemed to be material, shall survive the execution and delivery of this Agreement and the Closing and the consummation of the transaction contemplated hereby, and shall be binding upon and inure to the benefit of the parties hereto and their respective personal representatives, successors and permitted assigns.

**6.8** **Time.** Time is of the essence hereunder. However, if the date for performance of any act hereunder falls on a Saturday, Sunday or Legal Holiday, then the time for performance of such act shall be deemed extended to the next succeeding regular business day.

**6.9** **Governing Law.** This Agreement shall be construed and interpreted according to the laws of the State of Iowa.

**6.10** **Entire Agreement; Amendment.** This Agreement, together with all the Exhibits attached hereto (if any) and incorporated by reference herein, constitutes the entire undertaking between the parties hereto, and supersedes any and all prior agreements, arrangements and understanding between the parties. This Agreement may be amended only by a written amendment executed by all of the parties hereto.

**6.11** **Authority of Parties.** The parties executing this Agreement on behalf of Buyer represent and warrant that they have the authority to execute this Agreement for and on behalf of Buyer. The parties executing this Agreement on behalf of Seller represent and warrant that they have the authority to execute this Agreement for and on behalf of the Seller and that the Seller is the sole owner of the Property and has full power and authority to execute and deliver a deed of conveyance conveying fee simple title to the Property, in accordance with the terms of this Agreement.

**6.12** **Severability.** Any provision, or distinguishable portion of any provision, of this Agreement which is determined in any judicial or administrative proceeding to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. It is the intention of the parties that if any provision of this Agreement shall be determined to be overly broad in any respect, then it should be enforceable to the maximum extent permissible under the law. To the extent permitted by applicable law, the parties waive any provision of law which renders a provision hereof prohibited or unenforceable in any respect.

(remainder of page intentionally left blank)



(signature page of Purchase and Sale Agreement)

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the day and year first above written, but actually on the dates set forth below.

**BUYER:**
Restoration St. Louis, Inc.
a Missouri corporation

By: _____

Print: _____AMRIT GILL_____

Its: _____President_____

Date: __4/25____2012

**SELLER:**
3rd St. IA LLC
a New York limited liability company

By: _____

Print: _____PARAG MEHTA_____

Its: _____MEMBER_____

Date: __4/12____2012



**EARNEST MONEY RECEIPT**

Receipt is hereby acknowledged of $126,000 as **additional** earnest money pursuant to the Purchase Contract executed by Restoration St. Louis, Inc. d/b/a Restoration Iowa, as Purchaser(s), and 3rd St. IA, LLC, as Seller(s), for the purchase and sale of 131 West 3rd Street, Davenport, IA.

October 29, 2012

**St. Louis Title, LLC**

By: _____

J. Matt Winkler

PLAINTIFF'S
EXHIBIT
6

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**Restoration St. Louis, Inc.**
Operating Account
3701 Lindell Blvd.
St. Louis, MO 63108

**REGIONS Bank**
8182 Maryland Ave.
Clayton, MO 63105

3724

**** ONE HUNDRED TWENTY SIX THOUSAND AND 00/100 DOLLARS

10/29/2012     $126,000.00*

PAY TO THE
ORDER OF

St. Louis Title, LLC
7701 Forsyth Blvd., Suite 200
Clayton, MO    63105

2012181

⑆003724⑆ ⑈081001387⑈ ⑆6900827138⑆



**EARNEST MONEY RECEIPT**

Receipt is hereby acknowledged of the deposit of $54,000.00 as earnest money pursuant to the Purchase Contract between Restoration St. Louis Inc. as Purchaser and 3rd St. IA LLC. , as seller, for the purchase and sale of real property known as 131 West Third Street, Davenport, IA 52801

May 7, 2012

**St. Louis Title, LLC**

By: _____
       Kelly Cochran

# SANDBERGPHOENIX
## & VON GONTARD P.C.

**Sue A. Schultz**
*Attorney*

784 Wall Street – Suite 100
O'Fallon, IL 62269
Tel: 618.624.3478
sschultz@sandbergphoenix.com
www.sandbergphoenix.com

February 11, 2013

**<u>Via Over-Night Delivery</u>**
Mr. Parag Mehta
3rd ST IA LLC
70 W 107 ST 6A
New York, NY 10018

> Re:    Notice of Default – Purchase and Sale Agreement ("Agreement") between 3rd ST IA LLC ("Seller") and Restoration St. Louis, Inc. ("Buyer") for the purchase and sale of 131 W 3rd Street, Davenport, Iowa ("Premises")

Dear Mr. Mehta:

As you know, this firm represents the interests of the Buyer under the above Agreement. As I have discussed with your attorney, Walter Conlon, pursuant to Section 4.3 of the Agreement, the Seller was required to remediate the environmental contamination at the Premises prior to the Closing Date. Due to Seller's failure to timely undertake such remediation, the Seller has breached the contract and is in default of the Agreement. On behalf of the Buyer, you are hereby notified of such breach and default. In accordance with Section 1.3 (b), all Earnest Money is to be immediately refunded to the Buyer and, as a result of such breach, the Buyer has directed the Escrow Agent to immediately refund all Earnest Money to the Buyer. In addition, the Buyer may pursue all remedies it has at law or in equity, for damages resulting from such breach and default.

Very truly yours,

*Sue A. Schultz*

Sue A. Schultz

SAS:sd

cc:    Nitin Jobanputra (via over-night delivery)
Walter Conlon (via e-mail)
Kelly Cochran – St. Louis Title (via e-mail)
Restoration St. Louis, Inc. (via e-mail)

PLAINTIFF'S EXHIBIT

I certify and attest that the above is a true copy of the original record of the Court in case number 13SL-CC00644 as it appears on file in my office.



Issued

4/5/13

**JOAN M. GILMER**, Circuit Clerk
St. Louis County Circuit Court

By

Kim Sansegra
_Deputy Clerk_